IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MURRAY and NINA MURRAY, : <br> : <br> Plaintiff, : <br> v. : <br> : <br> DOWNS RACING, LP, t/d/b/a : <br> MOHEGAN SUN AT POCONO DOWNS, : <br> and MOHEGAN COMMERCIAL : <br> VENTURES, PA, LLC : <br> : <br> Defendants. : | 3:19-CV-228 <br> (JUDGE MARIANI) |

## MEMORANDUM OPINION

### I. INTRODUCTION

On February 8, 2019, Plaintiffs James Murray and Nina Murray initiated the above-captioned Complaint arising out of injuries sustained by Mr. Murray as a result of a slip and fall at Mohegan Sun Pocono on February 17, 2018. (Doc. 1-3). Plaintiffs' Complaint alleges a count of Negligence against Defendant Downs Racing, LP ("Downs Racing") (Count I) and a count of Negligence against Mohegan Commercial Ventures PA, LLC ("Mohegan Ventures") (Count III) and a count of Loss of Consortium by Mrs. Murray against both Downs Racing (Count II) and Mohegan Ventures (Count IV).

On March 24, 2020, this action was re-assigned to the undersigned following the passing of the Honorable James M. Munley. Trial is currently scheduled to commence on August 2, 2021. (Doc. 63).

Presently before the Court are the following *in limine* motions by Plaintiffs:

1. Plaintiffs' Motion in Limine to Preclude Evidence of Mr. Murray's Drinking and/or Intoxication (Doc. 43);

2. Plaintiffs' Motion in Limine to Preclude Improper Lay Witness Testimony (Doc. 45);

3. Plaintiffs' Motion in Limine to Preclude Testimony or Other Evidence Describing the Contents of the Surveillance Tape in Breakers Bar (Doc. 47);

The Court will address these motions in turn.[1]

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707

---

[1] The Court will address Plaintiffs' concurred-in Motions in Limine to Preclude Evidence of Mr. Murray's Alleged Motivation for Bringing the Instant Lawsuit (Doc. 42) and to Preclude Testimony, Evidence, or Argument about Mr. Murray's Prior Episode of Syncope and Vertigo (Doc. 49) by separate opinion and order.

2

(E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### III. ANALYSIS

**1. Plaintiffs' Motion in Limine to Preclude Evidence of Mr. Murray's Drinking and/or Intoxication (Doc. 43)**

Plaintiffs' Motion *in Limine* to Preclude Evidence of Mr. Murray's Drinking and/or Intoxication requests that this Court preclude any "(1) evidence indicating that Mr. Murray was drinking on the night in question; (ii) evidence indicating that Mr. Murray was 'drunk' or 'intoxicated' on the night in question; (iii) and character or opinion evidence related to Mr. Murray's drinking proclivities." (Doc. 43, at 4).

3

Plaintiffs first argue that this Court should preclude evidence "related to the number of drinks Mr. Murray consumed and his 'friends' opinion of his level of intoxication because there is no evidence to support the conclusion that he was intoxicated at the time of his fall." (Doc. 44, at 5).

Under the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise provided by the Constitution, federal statute, Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Even if the Court deems the relevant evidence to be admissible, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

The Third Circuit has instructed that, in an action before a federal court on the basis of diversity of citizenship, state law applies in determining the admissibility of evidence concerning an individual's alcohol consumption and intoxication. *Rovegno v. Geppert Bros., Inc.*, 677 F.2d 327, 329 (3d Cir. 1982). Although Pennsylvania law governs the admissibility of such evidence, the Third Circuit has explained that Pennsylvania courts implicitly require the same balancing of probative value and prejudicial effect required by Rule 403. *Id.*

"[W]here recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial unless it reasonably establishes intoxication." *Surowiec v. Gen. Motors Corp.*, 672 A.2d 333, 336 (Pa. Super. Ct. 1996)(citing *Locke v. Claypool*, 627 A.2d 801 (Pa. Super. Ct. 1993)). *See also, Coughlin v. Massaquoi*, 170 A.3d 399, 408 (Pa. 2017) ("Although evidence of the consumption of alcohol carries the potential to prejudice the party against whom it is offered, it has been well established . . . that such evidence is admissible in cases where careless or reckless driving is at issue, and it will not be viewed as 'unfairly prejudicial' so long as it reasonably establishes a degree of intoxication which proves unfitness to drive.") (internal quotation marks omitted). Although the potential for prejudice exists as to all evidence regarding the consumption of alcohol, "the trial court's assessment of whether evidence of intoxication reasonably establishes the relevant finding of unfitness provides sufficient protection against *unfair* prejudice". *Coughlin,* 170 A.3d at 409 (emphasis in original). Thus, although not exhaustive, "objective criteria normally required to establish intoxication include evidence of staggering, stumbling, aimless wandering, glassy eyes or incoherent mumbling." *Locke*, 627 A.2d at 804.

In response to Plaintiffs' motion, Defendants "concede[] that there is no evidence in this case of what Plaintiff's blood alcohol was at the time of his alleged accident" and that "there is no expert testimony . . . to support the argument that at the time of his alleged accident, Mr. Murray was intoxicated". (Doc. 61, at 5). Defendants thus "concur[] in

5

Plaintiffs' . . . . motion and agree[] to not reference or present evidence of Mr. Murray's drinking, on the night of February 17, 2018-February 18, 2018." (*Id.*).

However, Defendants further assert that there is also no expert testimony "to support the assertion that at the time of his accident, Mr. Murray was sober." (Doc. 61, at 5). Defendants state that they anticipate that, at trial, Plaintiffs "will attempt to introduce evidence that on the night of the alleged accident, Mr. Murray consumed only one alcoholic beverage, several hours before the incident" and that Defendants have "contrary evidence in this regard." (*Id.* at 5-6). Defendants thus argue that "if Mr. Murray attempts to introduce evidence of his sobriety, then Mohegan Sun Pocono . . . is entitled to offer evidence to rebut such testimony." (*Id.* at 6).

In light of Defendants' statements, it is not clear that they actually concur in Plaintiffs' motion. Defendants acknowledge that they do not know Mr. Murray's blood alcohol level or have expert testimony to opine that Mr. Murray was legally intoxicated, but suggest there is other evidence that Mr. Murray had a number of alcoholic drinks on the evening in question. At this time, the Court is unaware of the evidence which may be presented by either party in support of their respective positions as to the amount of alcohol consumed by Mr. Murray, and whether the amount of alcohol consumed, and his actions connected therewith, establish the necessary degree of intoxication. The Court will thus reserve ruling on Plaintiffs' request to preclude evidence of Mr. Murray's drinking on the night at issue. Should Mr. Murray testify on direct examination as to his consumption of alcohol in the

relevant time period, he shall be subject to proper cross-examination by Defendants and impeachment under Federal Rule of Evidence 608 and any other applicable rule of evidence. Similarly, if Defendants attempt to elicit testimony at trial, from Mr. Murray or other witness who has personal knowledge of the matter, that Plaintiffs consider inadmissible or otherwise subject to proper objection, they shall timely raise their objections, including any Rule 403 objection, at which time the Court can better evaluate the testimony's admissibility, relevance, prejudice, and probative value in light of its content and purpose.[2]

Citing to Federal Rules of Evidence 404 and 405, Plaintiffs further assert that the Court must preclude "any evidence related to Mr. Murray's proclivity for going to bars and getting drunk because the same is inadmissible character evidence, and is otherwise irrelevant and unduly prejudicial." (Doc. 44, at 9). In response to this argument, Defendants assert that they have "no intention, at Trial, of arguing or introducing any evidence that Mr. Murray had a habit of drinking excessively." (Doc. 61, at 2). Accordingly, the Court will grant Plaintiffs' motion limited to this issue.

For the foregoing reasons, Plaintiff's Motion in Limine to Preclude Evidence of Mr. Murray's Drinking and/or Intoxication (Doc. 43) will be reserved in part and granted in part as set forth herein.

---

[2] If necessary, the Court will conduct a hearing outside the presence of the jury to hear the objected to testimony before ruling as to its admissibility.

## 2. Plaintiffs' Motion in Limine to Preclude Improper Lay Witness Testimony (Doc. 45)

Plaintiffs next move for the Court to preclude "improper lay witness testimony" (Doc. 45). Specifically, Plaintiffs request that Defendants be precluded from "adducing at the time of trial lay witness opinion testimony that: (i) Mr. Murray should have known he was not permitted on the Platform because one of his friends was previously told to get down from it; (ii) Mr. Murray should have known he was not permitted on the Platform because there was no obvious way to access it; (iii) 'common sense' should have indicated to Mr. Murray that he was not permitted on the Platform; and (iv) that Mr. Murray's decision to get on the Platform was irresponsible and negligent." (Doc. 45, at 3-4).

Pursuant to Federal Rule of Evidence 701, the opinion testimony of a witness who is not testifying as an expert is limited to one that is (1) "rationally based on the witness's perception", (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue", and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702", which governs testimony by an expert witness. Fed. R. Evid. 701. Types of "quintessential Rule 701 opinion testimony include identification of an individual, the speed of a vehicle, the mental state or responsibility of another, whether another was healthy, the value of one's property, and other situations in which the differences between fact and opinion blur and it is difficult or cumbersome for the examiner to elicit an

answer from the witness that will not be expressed in the form of an opinion." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1197-1198 (3d Cir. 1995).[3]

The Third Circuit has explained the contours of Rule 701 as follows:

Rule 701 means that a witness is only permitted to give her opinion or interpretation of an event when she has some personal knowledge of that incident. The objective of such testimony is to put "'the trier of fact in possession of an accurate reproduction of the event.'" In other words, "'lay opinion testimony is permitted under Rule 701 because it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event.'" This rule recognizes the reality that "eyewitnesses sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts." Accordingly, it permits witnesses "to testify to their personal perceptions in the form of inferences or conclusory opinions."

Importantly, the rule is carefully designed to exclude lay opinion testimony that "amounts to little more than choosing up sides, or that merely tells the jury what result to reach." Courts have recognized that this Rule does represent "'a movement away from ... courts' historically skeptical view of lay opinion evidence,' and is 'rooted in the modern trend away from fine distinctions between fact and opinion and toward greater admissibility.'" Nonetheless, it seeks to protect against testimony that usurps the jury's role as fact finder. While opinion testimony that "embraces an ultimate issue" to be decided by the trier of fact is not *per se* inadmissible, such testimony is barred when its primary value is to dictate a certain conclusion. "[T]he purpose of the foundation requirements of the federal rules governing opinion evidence is to ensure that such testimony does not so usurp the fact-finding function of the jury."

---

[3] Although Rule 701 was amended in 2000 to also limit a lay witness to testimony which is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702", the Advisory Committee Notes with respect to this amendment make clear that "[t]he amendment is not intended to affect the 'prototypical example[s] of the type of evidence contemplated by the adoption of Rule 701 relat[ing] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.' *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995).'" Fed. R. Evid. 701 advisory committee notes for the 2000 amendments.

9

*United States v. Fulton*, 837 F.3d 281, 291-292 (3d Cir. 2016) (footnotes omitted). Nonetheless, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed.R.Evid. 704. *See Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 356 (3d Cir. 1998) ("Rule 704 of the Federal Rules of Evidence authorizes the admission of the opinion of lay witnesses regarding the ultimate issues to be decided by the trier of fact. Fed.R.Evid. 704.").

In response to Plaintiffs' motion, Defendants state that they have "no intention of eliciting" lay opinion testimony from any witnesses in this case as to the witnesses' opinions "about Mr. Murray's actions and judgments on the night in question." (Doc. 59, at 1). However, Defendants assert that, depending on the evidence developed at trial, they are entitled to argue that "Mr. Murray should have known he was not permitted on the subject platform at the time of his alleged accident, that 'common sense' should have indicated to Mr. Murray that he was not permitted on the subject platform, and that Mr. Murray's decision to get on the platform was irresponsible." (*Id.* at 2).

Upon review of the parties' respective positions, it is unclear to the Court that any dispute exists as to what testimony may be elicited, and arguments made, with respect to the issues identified by Plaintiff. Defendants' response is a concession that Rule 701 bars them from eliciting opinion testimony which may dictate a certain conclusion or usurp the jury's fact-finding function. Further, Plaintiffs specifically state that "it is the *opinion testimony* that they seek to exclude." (Doc. 46, at 6 n.2) (emphasis in original). Plaintiffs admit that Defendants "can adduce testimony concerning *the fact* that the friend was told to

get down from the Platform" and that "Defense counsel can certainly urge the jury to reach that conclusion [that Mr. Murray should have known he was not permitted on the Platform because his friend previously told him to get down] in her closing argument. . . ." (Doc. 46, at 6 & n.2) (emphasis in original). Plaintiffs also concede that Defendants' counsel "can certainly argue . . . to the jury in her closing argument" that "Mr. Murray's decision to climb on the Platform was irresponsible and negligent." (*Id.* at 8-9). Plaintiffs further acknowledge that Defendants can "certainly introduce testimony about the access points, or lack thereof, surrounding the Platform" and that Defendants "can certainly introduce *factual evidence* as to the physical dimensions of the Platform and the perceived lack of access thereto." (*Id.* at 7, 8) (emphasis in original).

Despite the apparent agreement between the parties as to what lay witness testimony may properly be elicited at trial, Plaintiff's motion cannot be granted at this time where the Court is not in a position to rule on this request without first hearing testimony by the witnesses and the specific questions which Plaintiffs believe elicit inadmissible lay opinion testimony. The Court will therefore defer ruling on Plaintiffs' motion. Plaintiffs shall timely object at trial should they believe Defendants are attempting to elicit lay testimony in violation of Rule 701 or any other evidentiary rule.

### 3. Plaintiffs' Motion in Limine to Preclude Testimony or Other Evidence Describing the Contents of the Surveillance Tape in Breakers Bar (Doc. 47)

Plaintiffs' next motion in limine requests that the Court preclude the defendants from introducing testimony or other evidence describing the contents of the surveillance tape in the Breakers Bar. (Doc. 47).

Plaintiffs claim that surveillance footage of the incident at issue existed at one time and was destroyed by Defendants. They assert a belief that, at trial, "defendants will attempt to introduce evidence of the contents of the surveillance footage. It is believed that this attempt will include either the introduction of the Security Report, or the testimony of casino employees like the surveillance agent, who actually viewed the surveillance." (Doc. 48, at 3). Plaintiffs argue that Defendants "should not be permitted to prove the contents of the surveillance footage in this manner", claiming that the surveillance footage itself is the best evidence, and that Defendants "cannot satisfy the requirements of [Fed. R. Evid.] 1004 or 1007, and therefore cannot get around the proscription contained in [Fed. R. Evid.] 1002." (*Id.* at 3-4, 8).

In response to Plaintiffs' motion, Defendants state that they are "not in possession of any surveillance video of Mr. Murray's alleged fall" and that they have "no intention of playing any surveillance video of this accident or otherwise referencing the same." (Doc. 57, at 2; *see also, id.* at 5). Defendants thus assert that, "in essence, [they] concur[] in Plaintiffs' requested relief." (Doc. 57, at 5). Nonetheless, Defendants state that if, at trial, "Plaintiffs intend to offer evidence that Mohegan Sun Pocono failed to properly preserve

video evidence of Mr. Murray's alleged fall, then Mohegan Sun Pocono cannot concur in Plaintiffs' Motion and Mohegan Sun Pocono requests the ability to present evidence to explain why such surveillance video evidence does not exist." (Doc. 57, at 5).

Despite Defendants having concurred in the substance of Plaintiffs' motion, and their agreement to not do exactly what Plaintiffs were requesting be precluded – i.e. introducing evidence or testimony describing the contents of the surveillance tape – Plaintiffs' Reply brief appears to ignore Defendants' statements that they have no intention of referencing the surveillance video. Instead, Plaintiffs' Reply brief purportedly "clarif[ies] the purpose of the subject Motion", explaining that Plaintiffs "intend to introduce evidence at trial that surveillance of Breakers Bar existed at the time of the fall, that surveillance was reviewed in connection with the subject fall, and that the surveillance was subsequently destroyed." (Doc. 65, at 1-2). Plaintiffs nonetheless request that, despite their intention to introduce such evidence, Defendants be precluded from offering certain evidence to rebut Plaintiffs' evidence. However, Plaintiffs' statement presumes a *fait accompli*; here, the relevance and admissibility of *Plaintiffs'* evidence has not yet been determined. Plaintiffs' request that the Court, without having heard any testimony, or seen any evidence, preclude Defendants from introducing certain evidence is both inappropriate and premature. The Court is not in a position to assess what evidence or testimony Defendants would be entitled to introduce should Plaintiffs attempt to introduce the afore-stated evidence at trial.

For the foregoing reasons, and in light of Plaintiffs' "clarification", the Court will defer ruling on Plaintiffs' "Motion in Limine to Preclude Testimony or Other Evidence Describing the Contents of the Surveillance Tape in Breakers Bar" (Doc. 47).

### IV. CONCLUSION

For the forgoing reasons, Plaintiffs' *in limine* motions (Docs. 43, 45, 47) will be decided as set forth in this Memorandum Opinion. The rulings, however, do not alter the parties' responsibility to raise their objections at the appropriate time at trial, if warranted in light of the evidence adduced by that time. A separate Order follows.

Robert D. Mariani
United States District Judge